*547 OPINION OF THE COURT
Andrew P. Bivona, J.
This is an application by Arden Hill Hospital for an order mandating the respondent to accept assisted outpatient mental health services under the newly adopted Kendra’s Law (L 1999, ch 408). The application was brought on by way of order to show cause returnable on December 28, 1999. On that date the petitioner, by its attorney, Robert P. Augello, Esq., and the respondent appeared, as well as Selena Brooks, Esq., of counsel to the Mental Hygiene Legal Service counsel for the respondent. The Orange County Director of Community Services, who is required by the law to be noticed (Mental Hygiene Law § 9.60 [f]), and the County of Orange appeared in person and by Richard B. Golden, Esq., Orange County County Attorney, and the matter was adjourned to December 30, 1999, for hearing.
On that date the Orange County Director of Community Services moved to intervene on two issues: first, to appoint David W. Brody, M.D., as the preparer of a written treatment plan for the respondent, and second, for an order which states that the County of Orange shall not be responsible for any direct or indirect cost of such treatment as contained in the treatment plan. There was no objection by the petitioner or the respondent to the motion to intervene and therefore it was granted and there was also no opposition to the appointment of Dr. Brody as the preparer of the treatment plan. However, there was opposition by way of oral argument to the motion to absolve the County of Orange of any responsibility for any direct or indirect costs of the treatment contained in the proposed treatment plan. Neither the petitioner nor the respondent filed any opposition papers and the motion was marked submitted for written decision. The hearing proceeded as to the initial application and, after hearing the testimony of the doctor and there being no opposition to the petition or evidence submitted by respondent, the petition was granted, and a temporary order issued approving the proposed treatment plan pending final determination on the motion.
Although the Director concedes that most costs associated with treatment would be covered by insurance or Medicaid and he could not identify a cost for which he or the County would be responsible in this case, he is concerned that a cost not identified would occur. The only example of any possible cost not covered by insurance or Medicaid that was identified by the Director was the cost of transportation to execute the *548 proposed treatment plan and that was not an issue in the instant proceeding. Although this was the only illustration presented, the Director correctly pointed out that as the law is so new other costs may occur that have not yet been recognized. Accordingly, this court finds that it is incumbent upon it to decide this issue in order that the respondent’s treatment program is not impeded by an unforeseen cost for which there is no means of payment by insurance, Medicaid, or otherwise.
Kendra’s Law is a statutory scheme, involving both the Mental Hygiene Law and the Judiciary Law, to provide mandatory outpatient mental health services, including medication, for the mentally ill who “without routine care and treatment, may relapse and become violent or suicidal, or require hospitalization.” (L 1999, ch 408, § 2.) The law was enacted on August 9, 1999, and the relevant provisions became effective 90 days from that date. It appears that there have been no reported decisions under the law on the issue regarding the costs of implementation of the plan.
In regard to providing the necessary outpatient treatment services, the legislative findings also state that:
“Effective mechanisms for accomplishing these ends include: the establishment of assisted outpatient treatment as a mode of treatment; improved coordination of care for mentally ill persons living in the community; the expansion of the use of conditional release in psychiatric hospitals; and the improved dissemination of information between and among mental health providers and general hospital emergency rooms.
“The legislature further finds that if such court-ordered treatment is to achieve its goals, it must be linked to a system of comprehensive care, in which state and local authorities work together to ensure that outpatients receive case management and have access to treatment services.” (L 1999, ch 408, § 2.)
The assisted outpatient treatment program is defined as: “a system to arrange for and coordinate the provision of assisted outpatient treatment, to monitor treatment compliance by assisted outpatients, to evaluate the condition or needs of assisted outpatients, to take appropriate steps to address the needs of such individuals, and to ensure compliance with court orders.” (Mental Hygiene Law § 9.60 [a] [4].)
In defining “assisted outpatient treatment” the Legislature has decreed that such treatment “shall” include case management services or assertive community treatment team services and “may” include various other categories of services includ *549 ing “any other services * * * prescribed to treat the person’s mental illness and to assist the person in living and functioning in the community, or to attempt to prevent a relapse or deterioration that may reasonably be predicted to result in suicide or the need for hospitalization.” (Mental Hygiene Law § 9.60 [a] [1].)
Pursuant to the statutory scheme set forth in Mental Hygiene Law § 7.17 (f), the Commissioner of Mental Health appoints program coordinators whose responsibility it is to oversee and monitor the assisted outpatient treatment programs. The program coordinator’s oversight and monitoring duties are to insure (1) that each assisted outpatient receives the treatment provided for in the court order; (2) that existing services located in the assisted outpatient’s community are utilized wherever practicable; (3) that each assisted outpatient is assigned a case manager or assertive community treatment team; (4) that there is monitoring and reporting of the assisted outpatient’s compliance with treatment by the case manager or assertive community treatment team; and (5) that the treatment services are delivered in a timely manner. The director of community services of the local governments is to work with the program coordinators to coordinate the implementation of these programs.
Mental Hygiene Law § 9.47 (b) was added and provides that the director of community services is responsible for (1) filing of petitions for assisted outpatient treatment; (2) receipt and investigation of reports of persons allegedly in need of treatment; and (3) delivery of court-ordered services with program coordinators. This section also provides that: “In [the] discharge of the duties imposed by subdivision (b) of section 9.60 of this article, directors of community services may provide services directly, or may coordinate services with the offices of the department or may contract with any public or private provider to provide services for such programs as may be necessary to carry out the duties imposed pursuant to this subdivision.” (Mental Hygiene Law § 9.47 [b].)
Section 9.60 (b) of the Mental Hygiene Law mandates the director of community services to provide assisted outpatient treatment programs. The statutory framework provides that the director of a hospital licensed or operated by the Office of Mental Health may operate, direct and supervise an assisted outpatient treatment program but that the director of community services of a local governmental unit shall do so. (Mental Hygiene Law § 9.60 [b].) Accordingly, it appears that *550 the Legislature intends that even if a hospital operates an outpatient treatment program, this does not absolve the director of community services’ responsibility for operation of such a program. While a hospital may operate such a program, the hospital does not have the same duties as the director of community services unless it enters into a contractual agreement with the director of community services to fulfill same (Mental Hygiene Law § 9.47 [b]).
The law also provides that if the petitioner is the director of a hospital that operates an assisted outpatient treatment program, then the petitioner shall provide all necessary categories of services. However, “For all other persons, the order shall require the director of community services of the appropriate local governmental unit to provide or arrange for all categories of assisted outpatient treatment for the assisted outpatient throughout the period of the order.” (Mental Hygiene Law § 9.60 |j] [5].)
It is apparent that the Legislature intended that the directors of community services be responsible for the implementation of the assisted outpatient treatment programs and bear the costs of same either directly or by coordination of services already offered by the Department by providing the necessary treatment services through the existing programs or by contracting with a provider. All three of these options would seem to require expenditures by the local government whether as a result of hiring of staff to create the program to provide treatment services directly, expansion of staff to provide the treatment services through existing programs or consideration for a contractual arrangement with another entity to fulfill the director of community services’ obligation under Kendra’s Law.
In his application, the Orange County Director of Community Services argues first that section 9.60 of the Mental Hygiene Law “does not obligate the Director of Community Services and/or the County of Orange to be responsible for the costs associated with the treatment as deemed appropriate in the ordered Treatment Plan for the Respondent.” The second argument presented is that the petitioner or the respondent should be responsible for any costs. Lastly the Director argues that where, as here, the petitioner could apply for designation as the director of the assisted outpatient treatment program and opts not to do so, the petitioner should certainly bear the responsibility for any costs.
The court finds the last argument totally without merit, as under the statutory scheme no financial liability is imposed *551 upon the director of assisted outpatient treatment programs. While the intervenor is correct when he says section 9.60 of the Mental Hygiene Law does not obligate the local government or its director of community services, it is clear that Mental Hygiene Law § 9.47 (b) does as it is solely the director of community services who is charged with the obligation of providing the services either directly, or by coordination with the services of the Department, or by contract pursuant to Mental Hygiene Law § 9.47 (b) as set forth hereinabove. Likewise, the Director’s first argument that the director of community services and/or the local county should not be responsible for the costs associated with a treatment plan is without merit under this section of the law.
However, under certain circumstances the argument that the respondent or the petitioner should be responsible for the costs does have merit. Certainly if the respondent has financial resources, whether it be through employment or funds established by trust or the proceeds of a lawsuit, it would appear that the respondent should be responsible for the costs of his or her own treatment and for the costs of obtaining that treatment.
Under the law the respondent must be 18 years of age or older (Mental Hygiene Law § 9.60 [c] [1]). A petitioner may be (1) any person 18 years or older with whom the respondent resides; (2) the parent spouse, or sibling (who is 18 years or older) or the respondent’s child who is 18 years or older; (3) the director of the hospital in which the respondent is hospitalized; (4) the director of any public or charitable organization, agency or home providing mental health services to the respondent in whose institution the respondent resides; (5) a qualified psychiatrist who is either supervising treatment or treating the respondent; (6) the director of community services, or his or her designee, or the social services official of the city or county in which the respondent is either present or is reasonably believed to be present; or (7) a parole officer or probation officer assigned to supervise the respondent.
In those instances where the petitioner has an obligation by law to support the respondent, such as a spouse or a parent of a respondent who is under the age of 21 years, then the petitioner may be responsible. However, this obligation does not arise because that person is the petitioner, but arises because these persons have a legal responsibility imposed by law independent of this statute (Family Ct Act §§ 412, 413, for example). Likewise if the petitioner is the Department of Social *552 Services, and the respondent was a recipient of aid, it would appear to be the responsibility of that Department for the costs to ensure that the respondent obtained the needed treatment. Again, this duty does not arise as a result of this statute but by the operation of other laws. It is clear that the purpose of this law is to ensure that a person in need of outpatient mental health services receives same. To impose a financial duty on individuals not otherwise obligated by law, organizations or institutions to be responsible for the costs of the respondent receiving outpatient treatment could serve to frustrate the purpose of this law. To suggest that the Legislature intended that a psychiatrist, or parole or probation officer by virtue of being a petitioner have a financial obligation borders on the frivolous.
Accordingly, this court finds that the Legislature intended that those persons determined to be assisted outpatients shall receive the needed outpatient treatment and that the costs of same, not otherwise covered in another manner, are to be borne by the local government through the duties imposed by this law on the director of community services. Therefore, that branch of the motion requesting that the Director of Community Services and/or the County of Orange not be responsible for any direct or indirect costs must be denied.